CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/5/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:15-cr-10 |
| v. | MEMORANDUM OPINION |
| THOMAS FRANCIS SOMERS IV,<br>*Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's *pro se* motion to modify conditions of release, Dkt. 62, and *pro se* motion for sentence reduction and/or home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Dkt. 65.

Defendant, by counsel, previously filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act of 2018, Dkt. 46, which Judge Conrad denied on June 3, 2020, Dkt. 57. Defendant, proceeding *pro se*, then filed a second motion for compassionate release, Dkt. 58, which Judge Conrad denied on August 24, 2020, Dkt. 61.

On April 14, 2021, the Defendant filed a *pro se* motion to modify conditions of release, seeking recommendation for 12 months of Residential Reentry Center placement. Dkt. 62. The Court will deny this motion, as the Bureau of Prisons is in a better position to modify Defendant's conditions of release.

On April 4, 2022, Defendant, proceeding *pro se*, filed his third compassionate release motion. Dkt. 65. For similar reasons to Judge Conrad's in denying Defendant's second motion

for compassionate release, i.e., a weighing of 18 U.S.C. § 3553(a) factors, the Court will deny this motion.

## I. Background

On January 12, 2016, Defendant pled guilty to a two-count felony information, which charged him with receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(2), and possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2251(b)(2). Dkt. 26. On April 16, 2015, United States Department of Homeland Security agents executed a search warrant at Defendant's residence in the Western District of Virginia, in which they seized multiple computers and other associated devices, which computer forensics review showed contained over 3,500 images and over 100 video files of children engaging in sexually explicit content. Dkt. 20 at 1–2. Defendant admitted to having taken some of the photos himself and having used a peer-to-peer file sharing system to obtain child pornography from online sources. *Id.* at 2. Defendant also admitted to having taken "two photos of a minor female, who was approximately 8 or 9 years of age at the time, and uploaded these photos of the minor female and other children for the purpose of receiving child pornography." *Id.*

As part of Defendant's written plea agreement, the parties stipulated that Defendant would be subject to a base criminal offense level of 22 under § 2G2.2(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."), and this base offense level would be increased by 13 levels for the following reasons: possession of images of prepubescent minors (§ 2G.2(b)(2)), possession of images involving sadistic, masochistic, or violent conduct (§ 2G.2(b)(4)), use of a computer to commit the offense (§ 2G.2(b)(6)), and the offense conduct involving over 600 images (§ 2G2.2(b)(7)). Dkt. 26 at 3. The parties also agreed that the Government would not

seek to charge Defendant with any offenses arising from and related to the seizure of thirty-one firearms found in his residence, which included a "short barrel" firearm not registered to him. Dkt. 6 ¶¶ 21–22; Dkt. 32 at 3 n.1. Prior to sentencing, both parties filed sentencing memoranda arguing that a 121-month term of imprisonment would be appropriate for Defendant. Dkt. 32 at 5, 6; Dkt 31 at 2–5.

The Court sentenced Defendant to a term of 121 months, to be followed by a 20-year term of supervised release. Dkt. 36 at 2–3. Defendant has been in custody since April 16, 2015, and his projected release date, with credit for good conduct, is November 17, 2023. Defendant is presently incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"). Dkt. 65.

Defendant alleges that, in addition to concerns surrounding COVID-19, he is "suffering residual effects from injuries that occ[u]red while in the military," which include lack of lubrication in his left knee; damage to his sciatic nerve and vertebrae in his lower spine, for which he receives VA disability; and PTSD. *Id.* at 9–10. Defendant also alleges that he has severe diabetes mellitis type II, which the Bureau of Prisons ("BOP") and FCI Loretto medical staff have mismanaged, resulting in "elevated creatinine . . . indicating the existence of stage II chronic kidney disease." Dkt. 73 at 1. Further, he alleges that he has diabetic neuropathy. *Id.* And he argues that, because "the prison is overcrowded and all meaningful services (library, chapel, [] library, education, etc., . . .) are continually interrupted," "[g]iven [his] health issues, [and] the fact that he [is] constantly confined to an overcrowded environment where social distancing is impossible and testing of inmates and employees is a myth," remaining at FCI Loretto "puts his health and life in jeopardy." *Id.* at 1–2.

## II.     Analysis

### A. Defendant's *Pro Se* Motion to Modify Conditions of Release, Dkt. 62

A federal defendant who has been sentenced to a term of imprisonment is committed to the custody of the Bureau of Prisons ("BOP") until the expiration of the term imposed or early release. 18 U.S.C. § 3621(a). The BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b).[1] In designating the place of imprisonment, the BOP considers, among other things, "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(4)(B). The court can make a recommendation, but that recommendation has no binding effect on the authority of the BOP to determine or change the place of imprisonment. 18 U.S.C. § 3621(b).

Federal district courts throughout the country have differed in their decisions as to "whether a district court can make imprisonment placement recommendations on a Defendant's *post-sentencing* motion." *United States v. Patterson*, No. 2:00cr187, 2019 WL 127962, at *2 (E.D. Va. Jan. 8, 2019) (emphasis in original) (citing *United States v. Ferguson*, No. 6:16-cr-00707-JMC-8, 2018 WL 5095149, at *2 (D.S.C. Oct. 19, 2018)). This Court has previously determined that "[t]he greater weight of authority appears to be that a district court *may* issue a non-binding recommendation." *U.S. v. Smith*, No. 6:15-cr-00006-001, 2019 WL 4016211, at *3 (W.D. Va. Aug. 26, 2019) (emphasis added) (referencing *Ferguson*, 2018 WL 5095149, at *3; *Carter v. United States*, Criminal Case No. 14-CR-150, 2018 WL 2376513, at *3 (E.D. Wis. May 24, 2018)); *see also United States v. Statzer*, No. 1:08CR00024-020, 2016 WL 5940926, at *2 (W.D. Va. Oct.

---

[1] Title VI, Section 601, of The First Step Act of 2018 amended 18 U.S.C. § 3621(b) to encourage the placement of prisoners close to their families and included the following addition: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

13, 2016) ("Moreover, while nothing prevents this court from making a recommendation [of halfway house placement], I believe that the BOP is in the best position to determine the proper placement of the defendant."); *United States v. Caudle*, 740 F. App'x 364, 365 (4th Cir. 2018) (unpublished) (per curiam) (assuming that district courts have the authority to make post-sentencing judicial recommendations for placement under the Second Chance Act); *Patterson*, No. 2:00cr187, 2019 WL 127962, at *2 (concluding that a district court may issue a non-binding, strictly advisory recommendation regarding placement without violating 18 U.S.C. § 3582 and Fed. R. Crim. P. 35). But courts have simultaneously emphasized that, although they *may* issue such recommendations, "the BOP is in a superior position to make these types of placement decisions and [the court] cannot overstate that the court's authority in this regard extends only to a non-binding recommendation." *Id.* (quoting *Ferguson*, 2018 WL 5095149, at *3).

In support of the Court issuing the recommendation that he seeks regarding Residential Reentry Center ("RRC") placement, Defendant represents that he has maintained a good disciplinary record with minimal incident reports while incarcerated, has gained skills, has worked on his skills as a writer, and has worked on his business/life plan for when he is released, which includes reestablishing his former business and starting new ones. Dkt. 62 at 1. He also completed Adult Continuing Education classes, including those considered Release Preparation Programming classes. *Id.* He has taken various classes in the Chapel and various correspondence courses. *Id.* Further, he participated in classes offered by the Psychology Department at FCI Loretto, which allowed him to "work on [his] anxiety and depression issues and [his] thought process." *Id.*

However, after consideration of the information submitted by Defendant and relevant law, the Court finds that the BOP is in a superior position to evaluate Defendant's assertions and to determine the extent, if any, to which he should serve all or part of the end of his sentence in an

RRC. The Court recognizes that "[t]he BOP has far more information about how Defendant has done and is doing, and how [h]e will likely do in the future, than this Court does." *See Smith*, 2019 WL 4016211, at *3 (citing *United States v. Kimble*, No. RDB-13-0035, 2018 WL 5841970, at *2 (D. Md. Nov. 8, 2018); *United States v. Harrell*, No. 2:12-CR-00024-BO-1, 2018 WL 4868816, at *1 (E.D.N.C. Oct. 7, 2018); *United States v. Shroyer*, No. 2:17CR00003, 2017 WL 4684192 (W.D. Va. Oct. 18, 2017); *cf. United States v. Jacko*, No. 14-cr-98-pp, 2019 WL 398829, at *3 (E.D. Wis. Jan. 31, 2019)). The Court, therefore, will deny Defendant's request for a recommendation under the circumstances of this case.

Nonetheless, the Court stresses that its decision not to make the recommendation sought by Defendant in no way reflects negatively on his eligibility for RRC or on the conditions of any such placement. The Court commends Defendant for trying to use his time in prison for self-betterment and to prepare for life after his release.

### B. Defendant's *Pro Se* Motion for Compassionate Release, Dkt. 65

#### i. Defendant's Proffered Reasons for Early Release

Defendant argues that extraordinary and compelling reasons for early release are presented by the combination of his current medical condition and the heightened risk to him posed by the COVID-19 pandemic. Dkt. 65 at 2. In terms of his medical conditions, Defendant has diabetes, diabetic neuropathy, and other conditions. Dkt. 73 at 2; Dkt. 65 at 9–10. He asserts that such conditions "are recognized to increase the risk of complications, hospitalization, and even death," from COVID-19, and his chance of contracting COVID-19 in the prison environment is great as he "lives in a six-man cell containing 111 usable square feet, 18.5 square feet per inmate, approximately 70% of what the BOP mandates (25 sq. ft per person)," "[a]lmost

all daily activity occurs with other inmates and staff in confined areas," "many inmates and staff refuse to wear masks," and "'[p]revention' consists of moving groups of inmates from one block to another without rhyme or reason, locking them up, and handing out aspirin." *Id.* at 8.

      ii.    **Statutory Requirements**

Defendant brings this motion under 18 U.S.C. § 3582(c)(1)(A).[2] Informally known as the compassionate release statute, this provision is understood to "introduce compassion as a factor in assessing ongoing terms of imprisonment" by "authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and

---

[2] The relevant portion of the statute reads as follows:

> **(c) Modification of an Imposed Term of Imprisonment.**
> —The court may not modify a term of imprisonment once it has been imposed except that—
>
>   **(1)** in any case—
>
>     **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>       **(i)** extraordinary and compelling reasons warrant such a reduction
>
>       [. . . .]
>
>     and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

A defendant seeking early release vis-à-vis the compassionate release statute faces two threshold barriers. First, the defendant must afford the BOP the opportunity to file a motion on his behalf. § 3582(c)(1)(A) (allowing for a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").[3] Second, he must identify extraordinary and compelling reasons that warrant a sentence reduction. § 3582(c)(1)(A)(i).[4]

After both conditions are met, the district court is authorized to consider whether, after weighing the factors set forth in 18 U.S.C. § 3553(a), the defendant should be released from his sentence early. § 3582(c)(1)(A). *See also High*, 997 F.3d at 186 (clarifying that the consideration of § 3553(a) factors comes into play once a successful showing of extraordinary and compelling circumstances has been made); *United States v. Graham*, No. 21-6613, 2022 WL 1172169, at *1 (4th Cir. Apr. 20, 2022) (relaying the three step process).

### iii. Defendant's Eligibility for Early Release

---

[3] The Fourth Circuit recently held that this exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2022).

[4] The additional statutory requirement that any reduction be consistent with the policy statements issued by the Sentencing Commission is inapplicable to a *defendant's* motion for compassionate release because the Sentencing Commission has, thus far, only issued policy statements addressing motions filed by the Bureau of Prisons. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

The Court finds that Defendant has satisfied the threshold requirements for early release. Judge Conrad previously recognized that Defendant satisfied the exhaustion requirement of § 3582(c)(1)(A). Dkt. 61 at 3. Further, the compassionate release statute is understood to grant broad discretion to district courts in deciding what constitutes extraordinary and compelling circumstances warranting early release. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (glossing statute as empowering courts "to consider *any* extraordinary and compelling reason for release that a defendant might raise") (emphasis original). With respect to the unique medical risks presented by the COVID-19 pandemic, a defendant must show that both (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected. *High*, 997 F.3d at 186. The Defendant has alleged facts supporting both elements. And, as Judge Conrad noted, "the government also acknowledges that [Defendant's] preexisting medical conditions, considered in conjunction with the COVID-19 pandemic, could provide an extraordinary and compelling basis for compassionate release." Dkt. 61 at 3–4.

The Sentencing Commission's policy statement from U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 can serve as further "helpful guidance." *Id*. (quoting *McCoy*, 981 F.3d at 282 n.7). *See also Hargrove*, 30 F.4th at 197. In the case of motions for compassionate release filed by the BOP, as opposed to motions (such as this one) filed by defendants, U.S.S.G. § 1B1.13 expounds "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (internal quotation marks omitted). For motions based on an inmate's medical condition alone, the policy statement articulates a high threshold: the defendant must be

"suffering from a terminal illness," *id*. at application note (1)(A)(i), or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *id*. at application note (1)(A)(ii).

That Defendant suffers from serious health conditions, which the Centers for Disease Control ("CDC") associates with higher risk for severe COVID-19 infection,[5] supports that his circumstances fall within U.S.S.G. § 1B1.13's "extraordinary and compelling reasons." Further, there is good reason to think that Defendant would be safer outside of prison. The BOP website reflects that there has been 1 inmate death attributed to COVID-19 at FCI Loretto, and 688 inmates have recovered after having had COVID-19.[6] The website also shows that Defendant's facility is currently at Level 3 Operations,[7] meaning that the medical isolation rate is greater than or equal to 7%, or that the facility vaccination rate is less than 50%, or that the community transmission rate has been greater than or equal to 200 per 100,000 over the last 7 days.[8]

However, even if Defendant is eligible for early release, weighing the § 3553(a) factors indicates that the Court should not grant his compassionate release motion.

      iv.      **<u>Section 3553(a) Factors Do Not Support Early Release</u>**

---

[5] *See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html* (last visited Oct. 3, 2022).

[6] *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 3, 2022).

[7] *See FCI Loretto*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lor/ (last visited Oct. 3, 2022).

[8] *See COVID-19 Modified Operations Plan & Matrix*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Oct. 3, 2022).

The Court concludes, as Judge Conrad did in responding to Defendant's second motion for compassionate release, that the factors set forth in 18 U.S.C. § 3553(a) weigh against Defendant's immediate release. Dkt. 61 at 4. Defendant did not have prior criminal history at the time of sentencing, but that does not change that his offense conduct was a "very serious crime" that occurred over the course of several years. *See United States v. Bosyk*, 933 F.3d 319, 334 (4th Cir. 2019) (describing the serious nature of the crime of downloading child pornography). Further, the record reflects that Defendant unlawfully possessed a firearm not registered to him. Dkt. 6 ¶¶ 21–22; Dkt. 32 at 3 n.1. Multiple other firearms, with over one-thousand rounds of ammunition and numerous loaded magazines, were found in Defendant's residence when he was arrested. Dkt. 6 ¶¶ 21–22; Dkt. 32 at 3 n.1. Defendant could have been prosecuted for the unregistered firearm, but the Government agreed not to pursue any additional charges if Defendant complied with his plea agreement obligations. Dkt. 61 at 4–5; Dkt. 6 ¶¶ 21–2; Dkt. 32 at 3 n.1. Finally, at the time of sentencing, the sentencing court agreed with the parties that the § 3553(a) factors supported a sentence of 21 months, and to release Defendant now would reduce his term of imprisonment to approximately 78 months—a term significantly below the guideline range of 121 to 151 months. *See* Dkt. 36 at 2–3; Dkt. 61 at 5.

Thus, as Judge Conrad previously found, while the COVID-19 pandemic raises concerns for individuals like Defendant who have preexisting medical conditions, the § 3553(a) factors weigh against Defendant's release, based on his history and characteristics; the seriousness of his offenses; and the need to afford adequate deterrence, protect the public, promote respect for the law, and avoid unwanted sentencing disparities.

### III.     Conclusion

– 12 –

While commending Defendant's apparent attempts at rehabilitation, the Court will deny Defendant's motion for a recommendation to the BOP that Defendant receives twelve months of Residential Reentry Center placement, Dkt. 62.

Upon consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court finds that early release is not warranted. Accordingly, Defendant's motion, Dkt. 65, will be denied.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  5th  day of October 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE